STATE OF CONNECTICUT *v.* FRANCISCO ARTIERI
(13000)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued December 3, 1987—decision released January 26, 1988

*Susan A. Quinn,* certified legal intern, with whom were *Todd D. Fernow, Robert C. Walsh,* certified legal intern, and, on the brief, *Michael R. Sheldon,* for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, was *Terrence A. Sullivan,* state's attorney, for the appellee (state).

SHEA, J. A jury found the defendant guilty of possession of a narcotic substance with the intent to sell in violation of General Statutes § 21a-277 (a).[1] In this

---

[1] "[General Statutes] Sec. 21a-277. (Formerly Sec. 19-480). PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses,

appeal from the judgment rendered in accordance with the verdict, the defendant claims that the trial court erred by abusing its discretion in permitting the state to introduce, as rebuttal evidence, his three 1975 convictions for sale and possession of heroin, including the facts underlying those convictions. He contends that he was thus deprived of a fair trial. We find error and remand the case to the trial court for a new trial.

From the evidence at the trial the jury could reasonably have found the following facts. On the evening of February 7, 1985, members of the statewide narcotics task force (SNTF) and of the Willimantic police department, armed with a search and seizure warrant, assembled a team of officers outside 33 Cameo Drive in Willimantic to await a shipment of narcotics, which they expected to be delivered to that address at that time in a blue Pontiac LeMans automobile. The "target vehicle" was sighted at about 10:50 p.m. by Trooper Sydney E. Luther, who was stationed nearby in a surveillance van. According to Luther, after the car had stopped near the house, both the defendant, Francisco Artieri, who was driving the Pontiac, and the passenger, Raymond Castillo, exited and went to the trunk of the car together. The defendant opened the trunk and Castillo reached in and grabbed something out of the trunk. The object removed from the trunk was described as "a dark object, plastic bag type object which was approximately no longer than a foot." Castillo carried the package under his arm to the house

compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned."

and knocked on the door. The two men were then let into the house.

During the ensuing raid of the house, the police confiscated approximately 800 glassine bags of heroin, packaged in lots of 100 in larger plastic bags, which were cylinder-shaped and wrapped with masking tape. The defendant and the other occupants of the house were arrested. The police summoned a tow truck to remove the vehicle in which the defendant and Castillo had arrived. When the car had been removed, they noticed a brown plastic bag lying in the snow about one foot inside the snow track left by the vehicle on the passenger side. This item contained eleven cylinder-shaped bags wrapped with masking tape. Inside each bag were approximately 100 glassine packets of white powder, later found to be heroin.

I

The only issues in this appeal are whether the trial court erred by permitting the state to introduce during its rebuttal the defendant's three 1975 convictions for sale and possession of heroin, and if so, whether that error was harmful.

The principal reason offered at trial for the introduction of the defendant's prior convictions was that they allegedly contradicted testimony that he gave on his cross-examination by the state. It is well established that "[e]vidence which is inadmissible except to contradict a witness, but which contradicts nothing the witness has testified to, is inadmissible . . . ." 98 C.J.S., Witnesses § 639 (a). This court has held that it is erroneous to admit evidence that does not contradict the testimony of a witness when such evidence has been admitted ostensibly for that purpose. *State* v. *L'Heureux,* 166 Conn. 312, 323, 348 A.2d 578 (1974); *State* v. *Hines,* 163 Conn. 617, 619, 316 A.2d 392 (1972). In this case, neither the heroin convictions nor the facts underly-

ing them contradicted any of the defendant's testimony. The state asked the defendant a series of questions on cross-examination about whether he recognized the large cylinder-shaped plastic bags wrapped with masking tape, which contained the small glassine bags of heroin, as being a type of packaging commonly associated with heroin distribution:

"Q. You didn't know that the package that was removed from the car contained heroin?

"A. No.

"Q. Do you know what heroin is?

"A. Yes.

"Q. Have you ever seen heroin?

"A. Yes.

"Q. Have you seen heroin packaged, put in packages?

"A. Yes, I have seen it.

"Q. How is it that you know about that subject matter, Mr. Artieri? . . .

"A. I seen—I have seen it. And I have seen the people.

"Q. Where have you seen heroin?

"A. The streets. It's anywhere.

\* \* \*

"Q. Okay. Thank you. Mr. Artieri, if you were to see one of these rolled up, see a whole bunch of them together, would you recognize what they were?

"A. No.

"Q. You have never seen anything like that before, have you?

"A. No.

"Q. You wouldn't suspect at all that it contained packets of the heroin, would you?

"A. No.

"Q. Because you really haven't had any experience in that area, have you?

"A. (No response.)

"Q. Your answer?

"A. No."

The trial court then permitted the state to introduce the defendant's three prior convictions apparently to contradict his testimony that he was unfamiliar with that type of packaging for heroin.

The fact that the defendant had been convicted of three offenses in 1975 for possession and distribution of heroin did not contradict his testimony that he did not recognize the large cylinder-shaped plastic bags wrapped with masking tape as being the type associated with the distribution of heroin. Detective Michael Goldstein, who had arrested the defendant for the crimes resulting in the previous convictions, testified during the state's rebuttal that the heroin he had seized from the defendant in connection with these previous convictions was packaged in foil packets. The state presented no evidence that these three convictions had involved the use of large cylinder-shaped plastic bags wrapped with masking tape. We conclude that these convictions were not admissible to contradict the defendant's testimony that he was unfamiliar with that variety of packaging for heroin.

The state contends that, if the convictions and the facts underlying them did not contradict the defendant's testimony that he was unfamiliar with the man-

ner in which the heroin found by the police had been packaged, they did refute the impression his testimony may have created that his experience with heroin was limited to having seen it on "[t]he streets. It's anywhere." The quoted response, however, was to the question of *where* the defendant had seen heroin, and cannot fairly be viewed as an attempt to minimize his experience with that substance. The defendant's subsequent negative response to the question, "Because you really haven't had any experience in that area, have you?" plainly related only to the defendant's experience with the cylindrical type of packaging used for the heroin seized by the police.

The state also relies upon precedent holding that a prior conviction for sale of heroin is admissible as proof of intent to sell a substantial quantity of heroin found in the possession of an accused. "Under a charge of possession with intent to sell, the fact that in the past the defendant had been a seller of the drug would tend to characterize the nature of his possession of the drug at the time of the alleged offense." *State* v. *Amaral,* 179 Conn. 239, 244–45, 425 A.2d 1293 (1979); see *State* v. *Geyer,* 194 Conn. 1, 17, 480 A.2d 489 (1984) (*Shea, J.,* concurring); *State* v. *Barlow,* 177 Conn. 391, 393, 418 A.2d 46 (1979). In *Amaral,* however, the quantity of narcotics consisted of ten aluminum foil bags of heroin found in the defendant's home, an amount conceivably held for personal use of the defendant and thus not particularly indicative of an intent to sell. The "several" prior convictions for sale of heroin, therefore, had significant probative value. In the present case where 800 glassine bags of heroin packaged in lots of 100 were found in the home and 1100 bags similarly packaged were found under the car, if the defendant had knowledgeable possession of the heroin, the intent to sell or distribute was obvious. The central issue at trial, therefore, was whether the defendant actually knew what

the packages handled by Castillo contained. He was charged specifically with having transported a quantity of heroin to 33 Cameo Drive, Willimantic. The gravamen of his defense was that he was unaware of the contents of the packages carried by Castillo.

Where evidence having a serious potential for prejudice is offered, the trial court must weigh its probative value against its prejudicial effect. *State* v. *Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982). "Where the prior crime is quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility." *State* v. *Nardini*, 187 Conn. 513, 522, 447 A.2d 396 (1982). In the case at bar, the defendant was charged with virtually the same crime, possession of heroin with intent to sell, of which he had been convicted in 1975. In view of the tendency of jurors to assume that " 'if he did it before he probably did so this time' "; *Gordon* v. *United States*, 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029, 88 S. Ct. 1421, 20 L. Ed. 2d 287 (1968); a conviction for a crime similar to that charged inevitably weighs heavily on the side of prejudice and is counterbalanced only if the evidence has significant probative value on an important aspect of a case.

The trial court appears to have recognized these principles in ruling that the prior convictions could not be used merely to impeach the defendant during cross-examination. In ruling upon a motion in limine before the trial began, the court had ruled that the convictions, though barred as impeachment evidence, could be admitted "for the narrow purpose of showing Mr. Artieri's intent and knowledge in the present case." The state, however, did not offer these convictions during its case-in-chief, presumably because the large quantity of heroin involved and the type of packaging

used left no doubt whatever that it was being held for sale or distribution.

In admitting the evidence as rebuttal, the trial court did not indicate that, if the defendant was aware that he was transporting the heroin, there would be a serious dispute concerning his purpose. The court relied expressly on its construction of the defendant's response that he had no "experience in that area" as a denial of any experience with heroin generally rather than as a denial of any experience with the method of packaging to which the inquiry related. Because the court misconstrued the defendant's response, we cannot view the ruling admitting the prior convictions as indicating that the court had concluded that such evidence was highly probative of any significant issue in the case. On the central issue of whether the defendant knew the packages he had transported in his car contained heroin, indeed, the state has been unable to suggest how those convictions would have any probative value at all, let alone a quantum sufficient to outweigh their highly prejudicial effect. Accordingly, we find error in the ruling admitting the prior convictions.

## II

The defendant does not claim that this error was of constitutional significance. When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980); *State* v. *L'Heureux,* supra. The defendant must show that it is more probable than not that the erroneous action of the court affected the result. *State* v. *Ruth,* supra; *State* v. *L'Heureux,* supra, 323–24.

The state argues that even if the trial court erred in admitting the defendant's three 1975 heroin convictions the error was harmless in view of the overwhelming

evidence against the defendant. We agree with the state that under some circumstances the erroneous admission of prior convictions, including those exactly the same as the crime charged, may be harmless if the evidence against the defendant is overwhelming. We disagree with the state's contention that the evidence in this case was overwhelming. Castillo testified that he asked the defendant to drive him from Bridgeport to Willimantic because he did not have a motor vehicle operator's license. On cross-examination, Castillo reiterated that the defendant "didn't know anything about [the heroin]." The defendant consistently denied that he knew that the packages contained heroin.

The state during the trial produced some circumstantial evidence indicating that the defendant knew the packages contained heroin, but this evidence was hardly overwhelming. The state refers to the defendant's allegedly "furtive movements" in getting out of the car and approaching the house, but this conduct is at best equivocal in establishing his knowing participation in the offense. The state also relies upon the following statement made by the defendant: "If you got to do the time, you got to do the time." This remark, however, was made after Gilberto Quintina, arrested with the defendant at the house, asked Willimantic police officer Thomas Lombardo if they would be taken to the correctional facilities at Somers or Brooklyn, and Lombardo had responded that if they could not make bail they would probably be taken to Brooklyn. The state maintains that the defendant's statement demonstrated that he "adopted a nonchalant attitude toward the penalty for dealing in illicit drugs," but these remarks were hardly an admission of guilt in the present case.

The state's case is simply not sufficiently strong to overcome the probability that the defendant's prior convictions, when added to the state's other evidence, were

a decisive factor in the result. We conclude that the erroneous admission of the three 1975 convictions for heroin possession and distribution was likely to have affected the result of this case, and hold, therefore, that the error was harmful.

There is error, the judgment is set aside and the case is remanded to the trial court for a new trial.

In this opinion the other justices concurred.