STATE OF CONNECTICUT *v.* NELSON E. MCINTOSH
(4898)

BORDEN, BIELUCH and S. FREEDMAN, Js.

Argued May 5—decision released August 25, 1987

*John R. Williams,* for the appellant (defendant).

*Robert P. Hanahan,* special assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, *Walter Scanlon,* deputy chief assistant state's attorney, and *Patricia King,* deputy assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of sexual assault in the first degree with a deadly weapon in violation of General Statutes § 53a-70a. The defendant's principal claims are that the trial court erred (1) in allowing the state to cross-examine the defendant with evidence of prior acts of misconduct that did not relate to veracity and, additionally, to introduce extrinsic evidence on rebuttal with respect to those acts, (2) in denying the defendant's motion for judgment of acquittal, and (3) in permitting the state to elicit prior consistent statements from two of its witnesses on direct examination. We find error on the defendant's first claim.

The jury could reasonably have found the following facts: On September 2, 1982, the victim was working as a prostitute in Waterbury. A man driving a brown Monte Carlo, later identified as the defendant, pulled up alongside the victim and began talking with her. He left the car to approach her, displayed a revolver, and told her to get into the car. The victim complied because she was frightened. They drove one mile to Fulton Park where the defendant stopped the car. He grabbed the victim by the hair and said, "Bitch, you're going to do what I want [you] to do." She struggled with the defendant and he hit her a number of times. He forced her to perform oral and vaginal intercourse. The entire incident lasted about thirty minutes and, at the conclusion, the defendant drove off in his car leaving the victim in the park. A motorist stopped to aid her and took her to the police station. On the way, the victim

saw her friend, Velma King, another prostitute, speaking with the defendant who was sitting in the Monte Carlo. She yelled to King not to leave with the defendant. The defendant sped off and King accompanied the victim to the police station. The victim identified the defendant during a photographic array and in court.

## I

The defendant first claims that the trial court erred in permitting the state to impeach him on collateral matters raised during cross-examination. This claim has two aspects: first, that the trial court erred in allowing the defendant to be questioned on cross-examination about prior acts of misconduct, namely, soliciting prostitutes; and second, that the trial court erred in allowing the state, after the defendant's denial of the misconduct, to present two of the prostitutes as rebuttal witnesses. We agree.

In order to place this issue in its proper context, it is necessary to examine the relevant testimony, objections and rulings. The victim testified, as the state's witness, that both prior to and after the sexual assault, she had seen the defendant. Specifically, she testified that she had seen Judy Nordby getting out of the defendant's car on one occasion and Denise Dearie getting into the car on another. She testified, without objection by defense counsel, that both women were prostitutes.

The defendant testified on his own behalf, and denied committing the sexual assault. On cross-examination, the assistant state's attorney asked: "And, you occasionally would pick up[1] prostitutes in the car, isn't that

---

[1] We note that in the context of the evidence adduced at this trial and in light of the nature of the charges, when the state asked whether the defendant "picked up" certain people who the jury already knew were prostitutes, it was a rational inference that the state was asking the defendant about prior acts of soliciting prostitutes.

right?'' Defense counsel objected, but after a short colloquy withdrew his objection. The defendant responded that he did not pick up prostitutes. The assistant state's attorney then asked the defendant whether he had ''picked up'' Denise Dearie and Judy Nordby, respectively.. The defendant answered ''No.'' The state's attorney then began to ask: ''Didn't you have sex'' at which point defense counsel objected. The trial court sustained the objection on the ground that the defendant had denied ever ''picking up'' the two women. Thereafter, the assistant state's attorney asked the defendant whether he ''picked up'' Debbie Cybulski. Defense counsel objected on the basis that there was no earlier testimony by the victim concerning this person. The objection was overruled and defense counsel duly excepted. The state's attorney thereupon asked the defendant whether he ever ''picked up'' Sandra Webb. Once again, the defendant objected and out of the presence of the jury argued that the state was attempting to impeach the defendant by evidence of prior acts of misconduct.[2] Defense counsel argued that patronizing a prostitute, a misdemeanor, is not a basis for impeachment. The court ruled that the questions were permissible. Defense counsel took an exception to the ruling only with respect to questions about Cybulski and Webb, conceding that since the victim had earlier testified that she had seen the defendant in the presence of Nordby and Dearie, the questions asked of the defendant with respect to these two women were

---

[2] The defendant also argued that the cross-examination constituted a violation of a prior court ruling. The state had filed a motion to consolidate other files pending against the defendant for sexual assault. The state also filed a motion in limine to offer evidence of other crimes involving these sexual assaults, on the issue of identity. Some of the pending sexual assault charges were against women about whom the state had questioned the defendant on cross-examination. Both these motions were denied. The defendant claimed that the state's attempt to impeach the defendant by his prior association with prostitutes was in violation of this order of the court. In view of our conclusion, we need not review this claim.

relevant to the victim's identification of him. Thereafter, the defendant was asked whether he "picked up" Cybulski and Webb, respectively, to which he answered "No."

After both the state and the defendant had completed their cases, the state called as rebuttal witnesses both Nordby and Cybulski. The defendant objected on the ground that the purpose of the testimony was to place before the jury evidence of the defendant's prior acts of misconduct, namely, patronizing prostitutes, which, even if a permissible subject of inquiry on cross-examination, as a collateral matter could not be proved by the introduction of extrinsic evidence. The defendant argued further that the state was required to accept the answers given by the defendant on cross-examination that he had not "picked up" Nordby or Cybulski. The state argued that the evidence was admissible on the issue of the *truthfulness* of the defendant's answer on cross-examination. The trial court overruled the defendant's objection and allowed the rebuttal witnesses to testify. Thereafter, both Nordby and Cybulski testified that they were prostitutes, and had been approached by the defendant and had gone off with him. Cybulski testified that she met the defendant in a bar and left with him for Fulton Park and remained with him for three and one-half hours. Nordby testified that after the defendant drove up to her in his car she got in and they drove away.

It is beyond dispute that a witness may be impeached by evidence of specific acts of misconduct which relate to veracity, but not by those that merely illustrate general bad behavior. *State* v. *Martin,* 201 Conn. 74, 85–86, 513 A.2d 116 (1986); *State* v. *Roma,* 199 Conn. 110, 116–17, 505 A.2d 717 (1986); *Martyn* v. *Donlin,* 151 Conn. 402, 408, 198 A.2d 700 (1964); *Vogel* v. *Sylvester,* 148 Conn. 666, 675, 174 A.2d 122 (1961); C. Tait & J. LaPlante, Connecticut Evidence § 7.22a. The concern,

of course, is that a jury will convict the defendant on the basis of his bad character as evidenced by his prior bad acts and not on the basis of the evidence adduced at trial on the specific crime with which he is charged. Where, however, the collateral bad acts relate to veracity, the defendant is subject to cross-examination concerning them. *State* v. *Perry*, 195 Conn. 505, 523, 488 A.2d 1256 (1985); *State* v. *Orsini*, 187 Conn. 264, 268, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982); *State* v. *Horton*, 8 Conn. App. 376, 380, 513 A.2d 168, cert. denied, 201 Conn. 813, 517 A.2d 631 (1986). "Whether particular acts of misconduct are relevant to lack of veracity depends on whether they have a logical tendency to indicate a lack of veracity. . . . This question of relevancy is, generally speaking, not within the discretion of the court. . . . Thus, unless particular acts of misconduct are indicative of a lack of veracity, it is error to permit cross-examination concerning them, however much they may be indicative of bad moral character." (Citations omitted.) *Vogel* v. *Sylvester*, supra, 675–76.

It has been recognized that a witness may be asked whether he "was ever involved in stealing"; *State* v. *Martin*, supra, 87; whether he has cheated on his income taxes; *State* v. *Sharpe*, 195 Conn. 651, 657–58, 491 A.2d 345 (1985); and whether he used aliases or faked his death. *State* v. *Dolphin*, 195 Conn. 444, 458–459, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). These acts of misconduct logically tend to indicate a lack of veracity. The act of soliciting a prostitute does not. Our Supreme Court has specifically recognized that a witness' sexual conduct does not reflect upon his or her credibility. *State* v. *Mastropetre*, 175 Conn. 512, 518–19, 400 A.2d 276 (1978).

In light of our conclusion that soliciting a prostitute is not misconduct which relates to veracity, absent its

relevancy to a substantive issue in the case; *State* v. *Perry,* supra, 521; it was error for the trial court to permit the cross-examination in question. The state does not argue that the evidence was offered on a substantive issue, nor could it since the trial court had already ruled such evidence inadmissible for that purpose. We conclude, therefore, that it was improper to permit the state to ask the defendant whether he "picked up" Cybulski or Webb.

Having concluded that there was error in the state's cross-examination of the defendant, ordinarily we would next inquire whether it was rendered harmless, especially in light of the defendant's concession that two functionally equivalent questions were proper. We need not consider the issue of harmlessness, however, since we conclude that there was reversible error on the second part of the defendant's claim, namely, that the introduction of extrinsic evidence on this collateral matter was improper.

As we have already noted, a witness may be impeached with prior acts of misconduct which relate to veracity. *Martyn* v. *Donlin,* supra, 408; C. Tait & J. LaPlante, supra, § 7.22a. If the witness denies the misconduct, the examiner must take the answer and is precluded from offering extrinsic evidence of such conduct, unless it bears on a substantive issue. *State* v. *Horton,* supra, 381. " '[I]f the witness stands his ground and denies the alleged misconduct, the examiner must "take his answer" not that he may not cross-examine to extract an admission, but in the sense that he may not call other witnesses to prove the discrediting acts.' McCormick, [Evidence (3d Ed.)] § 42." Id., 380.

The state, once again, does not claim that the extrinsic evidence related to a substantive issue in the case. It argues, instead, that the evidence was introduced on the narrow issue of whether the defendant testified

falsely when he denied picking up prostitutes. Based on the principles outlined above, it was error for the trial court to allow the state to go beyond the defendant's answer and to introduce extrinsic evidence on the collateral matter.

This does not end our inquiry, however. We must now determine whether the error was harmful to the defendant. *State* v. *Horton,* supra, 381. Where, as here, the error is not of constitutional dimension, the defendant bears the burden of demonstrating that the "erroneous actions of the court likely affected the result." Id., 382.

We have reviewed the transcript in this case, and conclude that the introduction of the extrinsic evidence of the defendant's prior act of patronizing a prostitute probably affected the result. We reach this conclusion because the evidence in the case was such that the credibility of the witnesses was of utmost importance. The jury was presented with two versions of the events, namely, the victim's, as corroborated by her constancy of accusation witnesses, and the defendant's. There were no eyewitnesses to the assault. Nor was there any corroborating evidence. The defendant presented an alibi defense, claiming to have been in Washington, D.C., with his wife at the time of the sexual assault. Both the defendant, his wife and various relatives testified in this regard. The evidence presented by Cybulski and Webb that the defendant had solicited them was, therefore, very damaging because of its tendency to convince the jury that the defendant had a bad character since he patronized prostitutes, and therefore probably committed the sexual assault. Since the state's case depended on the jury believing the victim's testimony and, thus, disbelieving the defendant's testimony, it was likely that the erroneous admission of the extrinsic rebuttal evidence affected the result.

## II

The defendant also claims that the trial court erred when it failed to grant the defendant's motion for judgment of acquittal.[3] We disagree.

The defendant was convicted of sexual assault in the first degree with a deadly weapon in violation of General Statutes § 53a-70a. That statute provides in relevant part: "A person is guilty of sexual assault in the first degree with a deadly weapon when such person commits sexual assault in the first degree . . . and *in the commission of such offense* he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a deadly weapon." (Emphasis added.) The crux of the defendant's argument is that the state failed to prove that the defendant used a deadly weapon at Fulton Park in furtherance of the sexual assault.

The defendant does not contest that he threatened the use of, displayed or represented that he possessed a deadly weapon. The defendant argues, however, that because the revolver was not brandished in the park, the state failed to meet its burden of proof. We disagree.

The defendant's argument would require us to accept the proposition that, under § 53a-70a, the state must prove that the defendant threatened the use or displayed or represented by his words or conduct that he possessed a deadly weapon while the sexual assault actually took place or immediately prior thereto. We reject this proposition, and conclude that where the defendant, within a span of thirty minutes, forces a per-

---

[3] Despite our decision on the defendant's first claim which requires a new trial on the sexual assault charge, we must review the defendant's claim of insufficient evidence since, if he prevailed, he would be entitled to a judgment of acquittal.

son at gunpoint into a vehicle, and transports her one mile to a location where he sexually assaults her, a jury could conclude, on the basis of the evidence and all the reasonable inferences flowing therefrom; *State* v. *Liscio,* 9 Conn. App. 121, 125, 516 A.2d 1366 (1986), cert. denied, 202 Conn. 803, 519 A.2d 1208 (1987); that the defendant threatened the use or displayed by his words or conduct that he possessed a deadly weapon "in the commission of" a sexual assault.

### III

The defendant also claims that the trial court erroneously allowed the state to elicit prior consistent statements from two witnesses, Velma King and Officer Beth A. Martell, respectively, during their direct examination. We disagree.[4]

### A

King testified on direct examination that she was about to get into a car with a person who had offered her twenty-five dollars for her sexual services when the victim ran toward her yelling, "Don't go out with him. He just raped me." She testified that as the car sped off she observed that the license plate number was 621136 and the plates were white with blue or black letters. She described the driver as a black man with an afro hairstyle and a heavy build, who was wearing black framed glasses. King testified that she accompanied the victim to the police station. All this testimony was elicited without objection.

The state's attorney thereupon asked King whether she talked with anyone at the station and, if so, what she said. Defense counsel objected on the basis that the testimony was being elicited in an attempt to show a

---

[4] We consider this claim of the defendant because it is likely to recur on retrial. The defendant raises two other claims of error. Because they are not likely to recur on retrial, we do not review them.

prior consistent statement where the witness had not yet been impeached by an inconsistent statement. The trial court nonetheless allowed the question. King responded that she spoke with some police officers and "told them the color of the car, what the guy looked like and the license plate."[5] The defendant claims on appeal that it was error for the trial court to admit the prior consistent out-of-court statement.

We note first that the general rule is that the prior consistent statements of a witness are inadmissible at trial. *State* v. *Anonymous (83–FG),* 190 Conn. 715, 728, 463 A.2d 533 (1983); *State* v. *Dolphin,* 178 Conn. 564, 568, 424 A.2d 266 (1979). "Where the prior consistent statement becomes admissible, it may not be used as substantive evidence of the facts contained therein, but only to *rehabilitate the credibility of the witness which has been attacked.*" (Emphasis added.) *State* v. *Anonymous (83–FG),* supra. The rationale upon which this rule is based is that the witness' story " 'is not made more probable or more trustworthy by any number of repetitions of it.' " *State* v. *Dolphin,* supra, 569.

Under the circumstances of this case, we view King's statement of her conversation with the police officers as no more than a statement in which she provided routine and general information pertinent to a criminal investigation. King's answer to the question was so totally lacking in detail that it did not constitute a consistent statement which was likely to implicate her credibility in any way. King simply stated that she described the color of the car, the license plate number and the driver. Had she gone into greater detail, as in her earlier testimony, the issue of an erroneous admission of a prior consistent statement would be squarely before this court.

---

[5] Despite the defendant's suggestion otherwise in his brief, King did not repeat the license plate number a second time when relating what she told the police officers.

## B

The second aspect of the defendant's claim is that the trial court exceeded the permissible scope of the constancy of accusation doctrine when it permitted Martell, over the defendant's objection, to relate the description of the assailant's car given to her by the victim, including a statement of the license plate number. The defendant failed to take an exception to the trial court's ruling in this regard and we therefore decline to review the claim. See Practice Book §§ 288, 4063 (d) (3); *State* v. *Siemon,* 172 Conn. 19, 20, 372 A.2d 140 (1976); *State* v. *Hawkins,* 162 Conn. 514, 516–17, 294 A.2d 584, cert. denied, 409 U.S. 984, 93 S. Ct. 332, 34 L. Ed. 2d 249 (1972).

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.