STATE OF CONNECTICUT *v.* VIET X. NGUYEN
(6570)

BORDEN, SPALLONE and FOTI, Js.

Argued October 6, 1988—decision released January 3, 1989

*Robert Farr,* for the appellant (defendant).

*Paul Ferencek,* deputy assistant state's attorney, with whom were *Susann E. Gill,* assistant state's attorney, and, on the brief, *T. R. Paulding, Jr.,* deputy assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from a judgment rendered after a trial to the court, convicting him of assault in the third degree in violation of General Statutes § 53a-61,[1] and of breach of the peace in violation of Gen-

---

[1] "[General Statutes] Sec. 53a-61. ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) with intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon."

eral Statutes § 53a-181.[2] On appeal, the defendant claims the trial court erred (1) in admitting evidence, during the state's rebuttal case, of an alleged act of prior misconduct for the purpose of contradiction, and (2) in relying on the evidence of this prior act in determining the defendant's sentence. We find no error.

The trial court found the following facts. On November 29, 1986, the victim and his wife attended a dance in East Hartford. Between 8:30 and 9 p.m., a group of young people, including the defendant, entered the hall. The defendant approached the victim, who was seated at a table with his wife, and blew smoke in his face. The victim ignored him and the defendant walked away. Some time later, the defendant returned to the victim's table and, without warning, kicked him in the chest with a karate-like movement. When the victim stood up to defend himself, the incident ended and the defendant left. Later that same evening, as the victim and his wife were leaving the dance, Phu Dinh Le[3] grabbed the victim from behind and pushed him out of the hall toward his car. The defendant and a group of men were waiting near the car and as the victim and

---

[2] "[General Statutes] Sec. 53a-181. BREACH OF PEACE: CLASS B MIS-DEMEANOR. (a) A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public, hazardous or physically offensive condition by any act which he is not licensed or privileged to do."

On the third count of the information, charging disorderly conduct in violation of General Statutes § 53a-182, the defendant was found not guilty.

[3] Phu Dinh Le and the defendant were tried together. Phu Dinh Le was convicted of unlawful restraint in the first degree in violation of General Statutes § 53a-95 and breach of peace in violation of General Statutes § 53a-81.

Phu Dinh Le approached, the defendant kicked the victim. Phu Dinh Le placed the victim in a headlock, and the victim received a blow to his head in the area of his right temple. As a result of these assaults, the victim sustained cuts and bruises, and experienced pain.

The defendant's first claim is that the trial court erroneously permitted the victim to testify during the state's rebuttal case with respect to a prior assault by the defendant. In order to place this issue in the proper context, it is necessary to review the relevant testimony, objections and rulings. The state concluded its direct examination of the victim by inquiring into the issue of provocation. The victim testified that he did nothing that evening to provoke the assault. The court then interjected, asking the victim if he knew the defendant or had been involved in any prior incidents with him. When the defendant objected to the court's line of questioning, the court explained that it was attempting to ascertain whether the defendant had a longstanding resentment for the victim that would explain the defendant's actions. The victim was allowed to answer the question and responded that four or five years previous he had been involved in an incident with the defendant. The court did not further inquire as to this matter.

The defendant took the stand on his own behalf and in response to a question on direct-examination testified that he did not know the victim prior to the incident on November 29, 1986. On cross-examination, the state pursued this line of questioning and asked the defendant a series of questions with respect to whether he remembered an incident that had occurred four or five years earlier when the victim broke up a fight between the defendant and another person. The defendant's objections that this question was outside the scope of direct-examination and prejudicial were overruled. The defendant again denied being involved in any prior

incident with the victim. After the defendant rested his case, the state, on rebuttal, recalled the victim and asked him when he first saw the defendant prior to the assault on November 29, 1986. The defendant objected on the ground that this question was irrelevant and inflammatory. The trial court permitted the question, ruling that the testimony was admissible to establish whether the defendant had a motive to attack the victim and to impeach the defendant by contradictory evidence to show that the defendant had testified falsely. The victim then testified that approximately four to five years earlier, during a dance at St. Mary's School in Newington, he had broken up a fight between the defendant and another person, and that, at that time, the defendant had threatened him.[4]

The defendant's only objection[5] is that it was error to permit evidence of his prior misconduct in the state's

[4] On rebuttal the victim testified as follows: "Well, I went to the men's room out in the hall. I was coming through the hallway and I noticed Viet Nguyen go up to someone that was on a pay phone and strike him when he wasn't even looking at him from the back in the side of the face and this guy's face was cut wide open. It was bleeding . . . . [M]y father-in-law was in the same area at the same time who was almost seventy years old and I proceeded to just kind of break up this fight and then again it kind of went to the outside and I said I was going to call the police—somebody did call the police. I didn't—and was threatened by these people . . . . [I] was threatened by [the defendant's] saying he was going to go get a gun and come back and they took off and the cops came and nobody ever did anything at that point. . . ."

[5] The defendant does not claim on appeal that the trial court erred in permitting the state to cross-examine him with respect to the prior assault. Although we do not have to decide this issue, we note that under the circumstances of this case this line of questioning was not improper. As a general rule, a witness may be impeached only by evidence of his or her prior misconduct if that act relates to veracity and not merely to illustrate that the witness is a bad person. *State* v. *Martin,* 201 Conn. 74, 85–86, 513 A.2d 116 (1986); *State* v. *McIntosh,* 12 Conn. App. 179, 530 A.2d 191 (1987). This case does *not* present a situation in which the state was improperly permitted to question a witness about an act of misconduct unrelated to veracity. See, e.g., *State* v. *McIntosh,* supra. On the contrary, since defense counsel opened the door to this line of inquiry by asking the defendant on direct-

rebuttal case.[6] The defendant states that this evidence was inadmissible to show that the defendant had criminal tendencies.

It is well established that evidence of a defendant's prior misconduct is not admissible to prove that the defendant acted in conformity with that behavior. *State* v. *Geyer,* 194 Conn. 1, 480 A.2d 489 (1984); *State* v. *Ibraimov,* 187 Conn. 348, 446 A.2d 382 (1982); *State* v. *Gilligan,* 92 Conn. 526, 103 A. 649 (1918). "The concern, of course, is that the jury will convict the defendant on the basis of his bad character as evidenced by his prior bad acts and not on the evidence adduced at trial on the specific crime for which he is charged." *State* v. *McIntosh,* 12 Conn. App. 179, 183–84, 530 A.2d 191, cert. denied, 205 Conn. 808, 532 A.2d 77 (1987). The evidence in this case was not admitted for the purpose of establishing the defendant's bad character, but for the purpose of contradicting his testimony that he did not know the victim.

A witness may be impeached by the introduction of contradictory evidence of other witnesses as long as the evidence is in fact contradictory; *State* v. *Artieri,* 206 Conn. 81, 83, 536 A.2d 567 (1988); and that evidence does not relate to a collateral matter. *State* v. *McCarthy,* 197 Conn. 166, 176, 496 A.2d 190 (1985); C. Tait & J. LaPlante, Connecticut Evidence (2d. Ed.) § 7.24.1. "A contradiction is not collateral if it is rele-

---

examination whether he knew the victim, it was well within the scope of cross-examination for the state to pursue this matter further. See *State* v. *Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986); *State* v. *Horton,* 8 Conn. App. 376, 513 A.2d 1168, cert. denied, 201 Conn. 813, 517 A.2d 631 (1986).

[6] Although it is difficult to decipher from the defendant's scant brief, he also objects to the timing of the presentation of this evidence. He claims that if this evidence was admissible to establish the defendant's motive it should have been introduced during the state's case-in-chief. This argument is without merit. The evidence in this case was specifically offered for the purpose of impeachment by contradiction and, therefore, under the circumstances of this case rebuttal was the proper time for its introduction.

vant to a material issue in the case apart from its tendency to contradict a witness." *State* v. *McCarthy,* supra. "Whether extrinsic evidence contradicts testimony of a witness so as to require its introduction into evidence for impeachment purposes is within the trial court's discretion, subject to review only for abuse of discretion." *State* v. *Velez,* 17 Conn. App. 186, 194, 551 A.2d 421 (1988).

We conclude that the trial court's finding that the victim's testimony directly contradicted the defendant's assertion that he had no prior encounters with the victim, and had not threatened him, was well within its discretion. The question for us to determine, therefore, is whether this testimony was collateral. We conclude that it was not.

The trial court has wide discretion in determining relevancy and in admitting rebuttal evidence. *State* v. *Simino,* 200 Conn. 113, 123, 509 A.2d 1039 (1986). The defendant's denial of any prior involvement of the victim placed in issue a lack of motive for an unprovoked assault on the victim. The court, by allowing the state to present rebuttal evidence through the victim's testimony, properly determined that the evidence was relevant because it tended to show that the defendant had a motive for committing the assault. The rebuttal evidence indicated that the parties had previously been involved in a fight and that the defendant had made threats of a future reprisal against the victim. It is especially noteworthy that the evidence of this prior incident involved both the defendant and the victim in this case. The victim was not a mere bystander to a prior assault by the defendant, but a participant in that event. For this reason, we conclude that the trial court did not abuse its discretion in finding the evidence was relevant to a material issue and, therefore, not collateral.

"Where such evidence is offered in proof of an issue in the case, and not merely to show an evil disposition on the part of the accused, the trial court must still consider whether its prejudicial tendency outweighs its probative value before ruling upon its admissibility." *State* v. *Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982). Our review is limited to whether the court abused its judicial discretion or whether injustice appears to have been done. See *State* v. *Johnson*, 190 Conn. 541, 461 A.2d 981 (1983). We conclude that it was within the trial court's discretion to find that the relevance of this testimony outweighed its prejudicial tendency.

The defendant's second claim is that in sentencing him, the trial court improperly considered evidence of the prior unrelated assault as though it were a prior conviction. As evidence of this claim, the defendant relies on the remarks made by the trial court during the sentencing hearing,[7] and on the actual sentence imposed in the assault conviction of one year suspended after thirty days. We do not agree.

Our review of sentencing decisions is limited. "[I]f a sentence is within statutory limits it is not generally subject to modification by a reviewing court." *State* v. *Huey*, 199 Conn. 121, 126, 505 A.2d 1242 (1986). " 'A sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider

---

[7] Prior to sentencing, the trial court remarked: "Well, my recollection of the facts is that there was an assault, you are correct, and it was completely unprovoked except for the fact that maybe somewhere in Mr. Nguyen's past he had a run-in with the victim. However, it was a situation where, again, Mr. Nguyen had been in an assaultive posture and all the victim had done was try to break it up and prevent Mr. Nguyen from going further with whatever activity he had.

"All this leads me to believe Mr. Nguyen has a rather assaultive personality or he has some assaultive traits in his background and he's going to continue to get in trouble if he continues to get more slaps on the wrist."

matters that would not be admissible at trial.' *United States* v. *Sweig,* 454 F.2d 181, 183–84 (2d Cir. 1972). . . . To arrive at a just sentence, a sentencing judge may consider information that would be inadmissible for the purpose of determining guilt." *State* v. *Huey,* supra, 126, citing *United States* v. *Baylin,* 696 F.2d 1030, 1039 (3d Cir. 1982).

" 'It is a fundamental sentencing principle that a sentencing judge may "appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come." *United States* v. *Tucker,* 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). The trial court's discretion, however, is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicum of reliability. *United States* v. *Baylin,* 696 F.2d 1030, 1040 (3d Cir. 1982). As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion.' *State* v. *Huey,* [supra, 127]." *State* v. *Mancinone,* 15 Conn. App. 251, 285, 545 A.2d 1131 (1988).

The trial court had before it persuasive and reliable information that the defendant had previously engaged in assaultive behavior, and was, therefore, justified in considering that evidence in arriving at a sentence.

There is no error.

In this opinion the other judges concurred.