STATE OF CONNECTICUT *v.* JOSE G.*
(SC 17973)

Rogers, C. J., and Norcott, Katz, Palmer and Zarella, Js.

---

* In accordance with our policy of protecting the privacy interests of victims of sexual assault, we decline to use the last name of the defendant or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued December 5, 2008—officially released February 10, 2009

*Daniel J. Krisch*, special public defender, with whom were *Sandra M. Bouchard*, legal intern, and, on the brief, *Michael S. Taylor* and *Michael J. Nichols*, legal intern, for the appellant (defendant).

*Robin S. Schwartz*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael Columbo*, former deputy assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Jose G., appeals, upon our grant of certification, from the Appellate Court's judgment affirming the trial court's judgment of conviction of kidnapping in the second degree in violation of General Statutes § 53a-94, attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-70 (a) (1), intimidating a witness in violation of General Statutes § 53a-151a, and assault in the third degree in violation of General Statutes § 53a-61 (a) (1) in connection with a domestic incident involving the defendant's then girlfriend. The sole issue in this certified appeal is whether the Appellate Court improperly declined to review the defendant's claim that the trial court improperly had admitted into evidence certain testimony regarding prior incidents of uncharged sexual abuse that the defendant allegedly had perpetrated against the victim. The Appellate Court had declined to review his claim that the testimony constituted extrinsic evidence on a collateral matter and therefore improperly was admitted as impeachment evidence because: (1) the defendant was asserting a different claim of error than the ones he had raised at trial; and (2) he had raised that claim before the Appellate Court for the first time in his reply brief. *State* v.

*Jose G.*, 102 Conn. App. 748, 756, 929 A.2d 324 (2007). We conclude that the defendant has asserted a different claim of error on appeal than the ones he had raised at trial, and, accordingly, his objections to the admission of the evidence on unrelated grounds were inadequate to preserve this issue for appellate review. We therefore do not consider whether the Appellate Court also properly declined to address the merits of the defendant's evidentiary claim because he had failed to raise that issue in his main appellate brief. Accordingly, we affirm the judgment.

The Appellate Court opinion sets forth the following undisputed facts and procedural history. "In the very early morning hours of March 6, 2002, police officers on patrol [in the city of Stamford] noticed a commotion occurring in the front seat of the defendant's van at an intersection. As the van turned in front of the officers, the passenger, who was the victim, opened the door, and it appeared that she was trying to jump out of the van and flag down the officers, but she was being held back by the defendant, who was driving the van. The police pulled over the van, and the victim stated that the defendant had assaulted her. The victim was brought to the police station where she signed a voluntary, sworn statement that contained allegations that the defendant had forced her into the van and had proceeded to kiss her very hard and put his hand down her pants, digitally penetrating her vagina with his finger against her will, while instructing her not to yell. According to the statement, the defendant also struck the victim in the face approximately three times and threatened to kill her. The statement contained accusations that the defendant had hit the victim on two prior occasions and had physically, mentally and sexually abused her previously. After completing the statement, the victim was taken to Stamford Hospital, where she was examined.

"At trial, the victim recanted the sworn statements she had made to the police on March 6, 2002, testifying, inter alia, that on the night of the incident, the defendant had not threatened her, restrained her or digitally penetrated her, and she denied that he had abused her in the past. When confronted with her prior sworn statement, the victim indicated that she disagreed with some of its contents. The prior statement was admitted into evidence substantively at trial pursuant to *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986),[1] and a redacted version was read into evidence by the court clerk during the victim's testimony." *State* v. *Jose G.*, supra, 102 Conn. App. 751–52.

The record discloses the following additional facts and procedural history pertinent to the question of whether the defendant preserved at trial the claim that he raises on appeal. After the victim had testified and recanted her earlier statement to the police, the state presented several witnesses to testify regarding, inter alia, statements the victim previously had made alleging prior incidents of sexual abuse the defendant had perpetrated against her. The first witness, whose testimony is not at issue in this appeal, was Stamford police officer Aaron Trew, who testified that, when he had interviewed the victim during the early morning hours following the March, 2006 attack, the victim told him that the defendant had sexually assaulted her two weeks earlier in Norwalk. The next witness was J, a friend of the victim who had picked her up from the police station on the night of the incident. J characterized the victim's relationship with the defendant as troubled and

[1] "In *State* v. *Whelan*, supra, 200 Conn. [753], this court determined that an out-of-court statement is admissible as substantive evidence if (1) the statement is a prior inconsistent statement, (2) it is signed by the declarant, (3) the declarant has personal knowledge of the facts stated therein, and (4) the declarant testifies at trial and is subject to cross-examination." *State* v. *Holness*, 289 Conn. 535, 547–48, 958 A.2d 754 (2008).

described an incident that J had observed during which the defendant argued with the victim, threw things in the house, brandished a knife and threatened to kill both the victim and himself. When the state asked J more specifically if the victim ever had confided in her regarding sexual abuse, the defendant objected on the ground that the question was leading. In response to the objection, the state claimed that the testimony regarding statements the victim had made to J about prior sexual abuse was admissible as constancy of accusation[2] testimony. The trial court overruled the objection. When the state attempted to question J to confirm the time frame of the allegations, the defendant again objected that the questions were "not specific enough" and that the state was leading the witness. The court excused the jury to allow a voir dire examination of J, after which the court concluded that it would allow J to testify that the victim had told her that the defendant had sexually assaulted the victim on two prior occasions.[3] The court then stated to the defendant: "Your

---

[2] Constancy of accusation testimony is admissible to corroborate a claim of sexual assault. *State* v. *Arroyo*, 284 Conn. 597, 638, 935 A.2d 975 (2007). "[A] person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator." (Internal quotation marks omitted.) Id.

[3] After the jury was excused, the following exchange occurred:

"The Court: All right, voir dire. Constancy of accusation.

"[State's Attorney]: Yes.

"The Court: As you know as a prosecutor . . . after a victim testifies concerning a specific act of . . . sexual assault, other people to whom she had complained about the sexual assault are allowed to testify. They're allowed to testify as to what she said about who attacked her and when the attack occurred.

"[State's Attorney]: Yes.

"The Court: But that's it.

"[State's Attorney]: Okay.

"The Court: Not a description of the occurrence.

"[State's Attorney]: All right.

objection is noted if you wish." Before the jury returned, the trial court added: "The reason I'm allowing this in is because of this claim that the testimony the victim gave here in court ought to be disbelieved because of the statement she made earlier." The defendant raised no further objection and sought no further clarification. J then testified in accordance with her earlier testimony.

The state then called Stamford police officer Sandra Conetta, who had spoken with the victim on the night of the incident, and questioned her about the victim's disclosures regarding her history of victimization by the defendant. The defendant objected, claiming: "Your

"The Court: And the reason I'm allowing it is because the last police officer stated in his testimony that the victim had complained to him about a sexual assault and that he referred it to the Norwalk police department.

"[State's Attorney]: Right.

"[Defense Counsel]: Actually, Judge, that was the same incident. That's not a different incident.

"[State's Attorney]: I'm not sure if it's the same incident or not. If I could voir dire with the witness, we'll find out.

"The Court: Pardon me, let's find out.

"[State's Attorney]: Okay.

"The Court: Yes, that's why I'm going to have a voir dire.

"[State's Attorney]: Thank you, Judge.

"[Defense Counsel]: But the relationship—

"The Court: The jury is not present.

"[Defense Counsel]: Okay."

At that point, a voir dire examination of J ensued. At the end of the voir dire but prior to the return of the jury, the following exchange occurred:

"The Court: All right, but [J] cannot go into any specific indications, just that [the defendant] forced [the victim] to have sex; that's what [the victim] told [J] on the two occasions.

"[State's Attorney]: On the two occasions.

"The Court: One was in 2001, and one was three weeks or so before the Stamford Hospital visit?

"[State's Attorney]: Yes.

"The Court: All right. Your objection is noted, if you wish.

"[Defense Counsel]: Yes, please. Thank you.

"The Court: All right. Invite the jury in, please. The reason I'm allowing this in is because of this claim that the testimony [the victim] gave here in court ought to be disbelieved because of the statement she made earlier.

"[State's Attorney]: Yes, Your Honor."

Honor. We've been over this. . . . Already did it again on a different witness." The court overruled the objection. Conetta then testified that, on the way back from the hospital on the day of the assault, the victim had told Conetta about a prior incident in which the defendant had broken into her house and forced himself on her sexually, to which the defendant objected, stating: "Hearsay." The trial court responded: "No, there's an issue that's been raised about the conflict between the victim's testimony in court, and the testimony and the statement that she gave outside. I am going to overrule the objection."

After these witnesses had testified as to the victim's past allegations of abuse, Evan Stark, an expert on battered women's syndrome, testified to explain why battered women commonly recant statements about having been abused. At the close of evidence, the trial court instructed the jury about evaluating the allegedly inconsistent testimony of the victim. First, the court explained that the jury could consider that alleged inconsistency when evaluating Stark's testimony. Then, consistent with *State* v. *Whelan*, supra, 200 Conn. 743, the court explained to the jury that it could consider for substantive purposes the victim's prior sworn statement to the police.

Following his conviction, the defendant appealed from the judgment to the Appellate Court. Prior to filing his brief in the Appellate Court, the defendant filed a motion for articulation in the trial court, requesting that the court articulate the basis for admitting testimony from J and Conetta about the victim's previous complaints against the defendant of uncharged sexual assaults, as well as other evidence, including Stark's expert testimony related to battered woman's syndrome. In its response to the defendant's motion, the state did not object to the requested articulation, but did point to the portions of the transcript reflecting that

the trial court had admitted the evidence to impeach the victim.[4] The trial court denied the motion for articulation, and the defendant thereafter filed a motion for review. The Appellate Court granted the motion for review, but granted the relief requested therein only in so far as it ordered the trial court to articulate the basis of its ruling admitting Stark's expert testimony.

Pending the trial court's articulation to address Stark's testimony, the defendant filed a request, pursuant to Practice Book § 64-1, seeking a signed transcript or memorandum of decision from the trial court with respect, inter alia, to the court's ruling admitting the "constancy of accusation" testimony of J and Conetta. Before the trial court acted on that request, the court complied with the Appellate Court's order, articulating its rationale for permitting Stark to testify about battered women's syndrome, and, in so doing, discussed the "impeachment testimony" of J and Conetta to the extent that it had provided a relevant basis for admission of the syndrome testimony. Thereafter, the defendant submitted his main brief to the Appellate Court, claiming, inter alia, that the trial court improperly had admitted testimony by J and Conetta for "constancy of accusation" purposes.[5] *State* v. *Jose G.*, supra 102 Conn. App. 752. In January, 2006, several months after the

---

[4] The defendant contended in his motion for articulation that the trial court initially had admitted the testimony of J and Conetta as constancy of accusation testimony without clarifying that it was expanding the doctrine to cover not only the incidents that served as the basis for the crimes charged, but also an incident involving uncharged sexual misconduct by the defendant against the victim. In its response, the state agreed that the trial court had referred to the constancy of accusation doctrine, but only in the context of limiting the testimony for impeachment purposes.

[5] In addition to his evidentiary claim, the defendant claimed that the state had engaged in a pattern of prosecutorial impropriety that had deprived him of a fair trial. The Appellate Court rejected this claim on the merits, concluding that the prosecutor had engaged in some improper conduct, but that the conduct did not deprive the defendant of a fair trial. That claim is not at issue in this certified appeal.

defendant had filed his main appellate brief, the trial court issued a memorandum of decision pursuant to the defendant's § 64-1 request on the court's ruling admitting the testimony related to claims of uncharged sexual assaults by the defendant. The court therein reiterated that the testimony of J and Conetta had been admitted to impeach the victim's trial testimony, not as constancy of accusation testimony.[6]

Thereafter, the state filed its brief in the Appellate Court, contending therein that the defendant's constancy of accusation claim was not reviewable because the trial court had stated expressly that the evidence had not been admitted for that purpose. Id. The defendant thereafter filed his reply brief, acknowledging that the trial court had admitted the testimony of J and Conetta for impeachment purposes and claiming for the first time that the trial court nonetheless improperly had admitted the testimony because it constituted "extrinsic evidence on a collateral issue" that was more prejudicial than probative. Id., 752–53. The defendant contended that the Appellate Court should review this claim because, in light of the ambiguous record, he reasonably could not have raised it prior to the trial court's issuance of its January, 2006 memorandum of decision.[7] Id., 753.

At oral argument before the Appellate Court, the state contended that the basis of the trial court's decision was not ambiguous and that the defendant should have briefed the impeachment issue in his main appellate

---

[6] The trial court explained: "Because the trial testimony and the *Whelan* statement were in such total conflict, and because the jury had to decide which version or portions of which version to credit, the state was permitted to introduce additional evidence of out-of-court statements allegedly made by the victim in order to impeach her trial testimony."

[7] The Appellate Court opinion refers to the January, 2006 document as the trial court's articulation; *State v. Jose G.*, supra, 102 Conn. App. 753; the articulation, however, was issued on August 25, 2005, prior to the date on which the defendant submitted his main brief to the Appellate Court.

brief. Id., 755. Without abandoning its position that the claim is not reviewable, the state requested and was granted permission to submit a brief responding to the impeachment issue. Id.

The Appellate Court determined that the defendant had presented an entirely new claim of error on appeal, one that the trial court had had no opportunity to address, and, accordingly, his objections at trial as to the leading and hearsay nature of the questions were inadequate to preserve the issue properly for appellate review.[8] The court further noted that the defendant had not sought review of this unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or under the plain error doctrine. *State* v. *Jose G.*, supra, 102 Conn. App. 756. Accordingly, the Appellate Court declined to review the claim and affirmed the trial court's judgment. Id., 757. One member of the appellate panel dissented, however, concluding that the procedural history and circumstances were sufficiently unusual to warrant a departure from the general rule and thus to excuse the defendant's failure to raise the impeachment objection before both the trial court and in his main appellate brief. Id., 775–77, 780–81 (*Schaller, J.*, dissenting).

---

[8] As we have indicated previously in this opinion, the Appellate Court also concluded that the defendant improperly had failed to raise the issue in his main brief, rejecting his assertion that he did not have an earlier opportunity because the record had been ambiguous. We note that "[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 816 n.25, 911 A.2d 1099 (2007). "Our practice requires an appellant to raise claims of error in his original brief, [however] so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that [the appellate court] can have the full benefit of that written argument." (Internal quotation marks omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 393–94 n.19, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). Because the Appellate Court granted permission to the state to file a supplemental brief on the issue raised in the defendant's reply brief, such an action presumably would have remedied any disadvantage to the state in its ability to respond.

This certified appeal followed. Our review of the transcript confirms that the Appellate Court properly concluded that the defendant's objections at trial concerning the evidence introduced through J and Conetta were not sufficient to preserve his evidentiary claim on appeal that the testimony regarding the defendant's prior sexual assaults of the victim improperly had been admitted as impeachment evidence because the testimony was extrinsic evidence related to a collateral matter. We further conclude that the circumstances do not warrant a departure from our rules requiring this objection to have been raised in the trial court.

"Practice Book [§ 5-5] provides in pertinent part that '[w]henever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he [or she] desires it to go upon the record, before any discussion or argument is had.' [Practice Book § 60-5] provides in [relevant] part that the Supreme Court is not 'bound to consider a claim unless it was distinctly raised at the trial . . . .'[9] We have noted that '[t]he purpose of the rule requiring that an exception be taken that distinctly states the objection and the grounds therefor is to alert the court to any claims of error while there is still an opportunity for correction.' *State* v. *Utz*, 201 Conn. 190, 207, 513 A.2d 1191 (1986). This rule is essential to avoid trial by ambush [of the presiding judge and the opposing party]. *State* v. *King*, 216 Conn. 585, 590, 583 A.2d 896 (1990)." *State* v. *Dennison*, 220 Conn. 652, 657, 600 A.2d 1343 (1991). "These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . .

[9] Although the rules of practice acknowledge that the court also may consider an issue that "arose subsequent to the trial"; Practice Book § 60-5; for the reasons set forth in this opinion, we conclude that the issue that the defendant belatedly raised was not one that arose subsequent to trial.

Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 407–408 n.18, 902 A.2d 1044 (2006).

At trial in the present case, the defendant claimed that the question to J regarding whether the victim had confided in J regarding any sexual abuse by the defendant was "totally leading" and that Conetta's testimony regarding her discussion with the victim about any prior sexual assaults constituted hearsay.[10] These objections clearly were based on different legal theories than the one advanced on appeal. An objection that a question is leading is a *procedural* objection aimed at the *manner* in which a question *is being asked,* not at the evidence sought to be elicited. *State* v. *Dews*, 87 Conn. App. 63, 86, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005) (use of leading questions on direct examination improper method through which testimony was elicited). In other words, it is not the propriety of the evidence being questioned, but, rather, the manner in which it is being obtained. By contrast, a claim that evidence is hearsay targets the substance of the testimony proffered and is an assertion that the evidence is not competent. C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 8.2.2, p. 461; see, e.g., *Baughman* v. *Collins*, 56 Conn. App. 34, 39, 740 A.2d 491 (1999), cert. denied, 252 Conn. 923, 747 A.2d 517 (2000). An objection on such grounds, however, does not alert the trial court to a claim that the testimony was improper impeachment evidence because it was extrinsic evidence related to a collateral matter.

---

[10] As we previously have noted, when the state first called Conetta and questioned her about the victim's disclosures regarding her history of victimization by the defendant, the defendant objected, claiming: "Your Honor. We've been over this. . . . Already did it again on a different witness." After the court overruled the objection, Conetta testified, and the defendant then objected, stating: "Hearsay."

See *State* v. *Prioleau*, 235 Conn. 274, 310–11, 664 A.2d 743 (1995) ("The defendant did not claim at trial that the admission of [the witness'] proposed testimony was an improper method of impeachment because it was extrinsic misconduct evidence offered to contradict the defendant on a collateral issue. Rather, the defendant's counsel objected solely on the ground of relevancy. . . . Consequently, neither the trial court nor the prosecution was alerted to the possibility that the defendant's objection was grounded on anything other than relevancy. The state, therefore, did not have the opportunity to address or the court the occasion to rule on other grounds. Thus, to review the defendant's claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." [Citation omitted; internal quotation marks omitted.]); see also *State* v. *Paulino*, 223 Conn. 461, 474–76, 613 A.2d 720 (1992) (sole objection "to the line of questioning" insufficient to alert trial court that evidence was highly prejudicial in absence of objection to witness' answer, or request that answer be stricken).

The inquiries relevant to the admissibility of impeachment evidence are unrelated to the aforementioned objections. A witness may be impeached by the introduction of contradictory evidence of other witnesses as long as the evidence is in fact contradictory; *State* v. *Artieri*, 206 Conn. 81, 83, 536 A.2d 567 (1988); and that evidence does not relate to collateral matters, "that is, matters that are not directly relevant and material to the merits of the case. . . . Thus, the answer of the witness on cross-examination [as] to a collateral matter is conclusive and cannot be later contradicted." (Citations omitted; internal quotation marks omitted.) *State* v. *Colton*, 227 Conn. 231, 247–48, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133

L. Ed. 2d 892 (1996); see also Conn. Code Evid. § 6-6 (b), commentary ("the examiner must introduce the witness' untruthful conduct solely through examination of the witness himself or herself"). Thus, "[i]t has long been the rule in Connecticut that extrinsic evidence may not be used to contradict the testimony of a witness with regard to a particular act of misconduct. . . . [I]f the witness stands his ground and denies the alleged misconduct, the examiner must take his answer not that he may not further cross-examine to extract an admission, but in the sense that he may not call other witnesses to provide the discrediting acts."[11] (Citation omitted; internal quotation marks omitted.) *State* v. *Horton*, 8 Conn. App. 376, 380, 513 A.2d 168, cert. denied, 201 Conn. 813, 517 A.2d 631 (1986).

Had the trial court been notified of the objection presently raised by the defendant, that court would have been able to assess whether the evidence was collateral or relevant to a material issue in the case apart from its tendency to contradict a witness. See *State* v. *Nguyen*, 17 Conn. App. 234, 239–40, 552 A.2d 823 (1989). Had the state been made aware of the nature of the objection that the defendant has raised for the first time on appeal, the state might have been able to demonstrate that the impeachment was not as to a collateral matter or might have made other necessary adjustments to its case. See *State* v. *Brice*, 186 Conn. 449, 458, 442 A.2d 906 (1982). Because the defendant did not, however, inform either the court or the state that he was objecting to the evidence as improper

---

[11] "Extrinsic evidence may be admitted, however, if the subject matter of the testimony is not collateral, that is, if it is relevant to a material issue in the case apart from its tendency to contradict the witness. . . . Evidence tending to show the motive, bias or interest of an important witness is never collateral or irrelevant. It may be . . . the very key to an intelligent appraisal of the testimony of the [witness]." (Citations omitted; internal quotation marks omitted.) *State* v. *Colton*, supra, 227 Conn. 248; see also Conn. Code Evid. § 6-5, commentary.

impeachment on a collateral matter, neither the collateral nature of the evidence sought to be introduced, nor the use of extrinsic evidence to establish the prior inconsistency was ever touched upon by the court when it evaluated the propriety of admitting the now contested portions of the testimony of J or Conetta.

It is well settled that a trial court can be expected to rule only on those matters that are put before it. The Appellate Court dissenting opinion acknowledged that "the defendant at no time objected to the proposed evidence as improper impeachment." *State* v. *Jose G.*, supra, 102 Conn. App. 773 (*Schaller, J.*, dissenting). That opinion excused the defendant's failure, however, because the state "at no time offered the evidence as impeachment evidence." Id., 773–74 (*Schaller, J.*, dissenting). Our review of the transcripts reveals that, although the trial court appeared to have understood that the basis for the state's offer of this testimony was for constancy purposes, which the state acknowledges on appeal was an improper basis,[12] the court ultimately ruled that the testimony was admissible as impeachment evidence, as evidenced by the following statements: "The reason I'm allowing this in is because of this claim that the testimony [the victim] gave here in court ought to be disbelieved because of the statement she made earlier," and "there's an issue that's been raised about the conflict between the victim's testimony in court, and the testimony and the statement that [the victim] gave outside" of court to Conetta. The conclu-

---

[12] As we have noted previously; see footnote 2 of this opinion; the constancy of accusation doctrine permits a person to whom a sexual assault victim has reported the assault to testify only with respect to the fact and timing of the victim's complaint. *State* v. *Arroyo*, 284 Conn. 597, 638, 935 A.2d 975 (2007). The testimony the state sought to elicit dealt with the victim's complaints of prior sexual assaults *in addition to* her complaint regarding the pending charge. Thus, as the state concedes, it improperly had relied upon this doctrine for the admission of the testimony concerning the allegations of prior sexual assault.

sion that the trial court admitted the evidence for impeachment purposes only was bolstered by the court's earlier remark in which it had indicated: "And the reason I'm allowing [J's testimony] is because [Officer Trew] stated in his testimony that the victim had complained to him about a sexual assault and that he referred it to the Norwalk police department." Thus, the stated basis for admitting this evidence clearly differs from the purpose of constancy of accusation testimony—to corroborate the claim of sexual assault. See footnote 2 of this opinion. Indeed, the fact that the trial court did not give the jury any limiting instruction on the use of constancy of accusation testimony further demonstrated that the trial court did not admit the contested testimony for that purpose. Therefore, the defendant had notice and the opportunity during the trial to object to the use of the evidence for impeachment while there was still an opportunity for correction. Accordingly, we agree with the Appellate Court majority opinion that the circumstances in the present case do not warrant a departure from the well established rule limiting appellate review of purely evidentiary claims to the grounds raised before the trial court.[13]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[13] Therefore, we express no position on the merits of the defendant's claim on appeal challenging the contested portions of the testimony of J or Conetta.